## ROBERT WESLEY WALKER *v.* DIRECTOR, PATUXENT INSTITUTION

[No. 122, September Term, 1968.]

*Decided March 5, 1969.*

PER CURIAM.

The applicant, Robert Wesley Walker, was convicted of being a rogue and vagabond by Judge James A. Perrott, sitting without a jury, in the Criminal Court of Baltimore on June 23, 1967, and was sentenced to two years under the jurisdiction of the Department of Correction. On the same day, Judge Perrott ordered the applicant transferred from the jurisdiction of the Department of Correction to the custody of the Director of Patuxent Institution for examination and evaluation to determine whether or not he was a defective delinquent. Upon examination, it was the opinion of the staff of the Institution that he was a defective delinquent. The applicant was subsequently adjudged to be a defective delinquent in a jury trial on October 22, 1968. Application for leave to appeal was filed in which the following allegations were made.

1. That the trial court erred in overruling applicant's objections to the State's answers to interrogatories.
2. That the trial court erred in refusing to submit to the jury a requested list of special issues.
3. That the evidence was insufficient to support a finding that applicant is a defective delinquent.
4. That the applicant was denied due process of law by the procedure under which he was examined and tried on the issue of whether he was a defective delinquent.

I

On May 13, 1968, the applicant filed a series of interrogatories, which were answered by the State on July 1, 1968. On July 3, 1968, the applicant filed exceptions to the State's answers to the interrogatories. In its answers to the interrogatories the State had responded that the information requested was contained in the official file of the Patuxent Institution relating to the applicant and that this entire file was available to applicant's counsel at the Patuxent Institution. At a hearing before Judge J. Harold Grady on the applicant's exceptions, applicant's counsel stated that he was aware that the entire Patuxent file was open to him but took the position that the State should supply the information requested from the Patuxent file. There was no suggestion that any record relating to the applicant was being withheld. Judge Grady overruled the applicant's exceptions, stating that the information sought in the applicant's interrogatories was available to the applicant in the same way and to the same extent that it was available to the State, and that in the present case the availability of the entire file at Patuxent accomplished the purpose of the Maryland discovery procedure. It is clear that the lower court is vested with discretion in administering the rules concerning discovery and that a decision made in the exercise of that discretion will not be disturbed in the absence of a showing of its abuse. *Williams v. Moran*, 248 Md. 279, 291 (1967). Under the instant circumstances we find no showing of such abuse.

The Court of Appeals has stated that:

"One of [Maryland's discovery rules'] fundamental

and principal objectives is to require the disclosure of *facts* by a party litigant to all of his adversaries, and thereby to eliminate, as far as possible, the necessity of any party to litigation going to trial in a confused or muddled state of mind, concerning the facts that gave rise to the litigation. If all of the parties have knowledge of all of the relevant, pertinent and non-privileged facts, or the knowledge of the existence or whereabouts of such facts, the parties should be able properly to prepare their claims and defenses, thereby advancing the sound and expeditious administration of justice."

*Williams v. Moran, supra* at 291.

This statement of the fundamental objective of the rules of discovery has found application in the line of cases dealing with discovery in defective delinquent proceedings, which are civil proceedings. *Chavez v. Director,* 5 Md. App. 45, 46 (1968). In *Gray v. Director,* 245 Md. 80 (1966) one contention raised was that the State failed to answer certain interrogatories. The Court of Appeals found satisfactory the State's answers that the information requested was available to applicant's counsel at Patuxent during the normal working hours of the Institution. In *McCloskey v. Director,* 245 Md. 497 (1967) an issue was whether an inmate who desired to appear *pro se* at his redetermination hearing could examine the records and all other information at Patuxent which was to be used by the State. The Court of Appeals stated, in reversing the trial court's refusal to permit him to do so, that the defendant should have had the discovery procedures under the Maryland Rules available to him but that "no prejudice would have resulted to the defendant had the court permitted him *access* to the records, papers, and other properly *discoverable* information bearing on the case." (emphasis supplied). In *McCloskey v. Director,* 4 Md. App. 581 (1968) one contention was that the lower court erred in not requiring the State to divulge what reports and statements it intended to use as evidence against the applicant at his redetermination hearing. This Court disposed of that contention on the basis that the applicant has the right to inspect the rec-

ords concerning him, citing *McCloskey v. Director,* 245 Md. 497, as the authority.

On the basis of the foregoing, the applicant's first contention is without merit.

## II

At the hearing the applicant requested that the court give certain requested instructions, which were denied. We take these to be the "special issues" to which the applicant refers in his second contention for the reasons that (a) no request for special issues appears anywhere in the record and (b) applicant's argument in his application on this point states that the requested "special issues" "would have made that term [defective delinquent] more intelligible to the jury," a characterization appropriate in the context of instructions.

Under Maryland Rule 554 b, the court "* * * need not grant any requested instruction if the matter is fairly covered by the instructions actually given." The court in its charge to the jury gave them the statutory definition of defective delinquency (Md. Code, Art. 31B, § 5) (1967 Repl. Vol.) and provided them with a written copy thereof for use in their deliberation. We feel that the charge fairly covered the matters in the requested instructions, which would have, in the portions here relevant, merely expanded on the statutory definition. See *Feldman v. Director,* 5 Md. App. 60, 62, 63 (1968). This contention is thus without merit.

## III

The applicant argues in support of his third contention that for all practical purposes the State's case consisted of Dr. Boslow testifying from a report prepared at Patuxent and that such a report provides insufficient evidence for a finding of defective delinquency. We have previously held that the testimony of Dr. Boslow, the Director of Patuxent Institution, constitutes sufficient evidence even though such testimony is based on reports made by himself or others at Patuxent Institution. *Doxzen v. Director,* 3 Md. App. 422 (1968). Applicant's third contention thus provides no relief.

## IV

In support of his fourth contention, applicant argues several

points, none of which has merit. We dispose of them seriatim, mentioning for each the applicant's contention:

That the examining staff members at Patuxent did not comply with the requirements of *Miranda v. Arizona,* 384 U. S. 436 (1966). Patuxent psychological and psychiatric examinations are not custodial interrogations within the purview of *Miranda. Wise v. Director,* 1 Md. App. 418 (1967).

That Dr. Boslow should not have been permitted to testify to the ultimate issue of defective delinquency. It has long been settled that such testimony is permissible. See *Schultz v. Director,* 227 Md. 666 (1962) ; *Director v. Daniels,* 243 Md. 16, 48 (1966).

That the State should not be permitted to introduce evidence that applicant was previously adjudged a juvenile delinquent and that the State should not be permitted to introduce evidence that applicant has been arrested unless those arrests were followed by criminal convictions of record. The evidence of which applicant complains was contained in the report prepared by the Patuxent examining staff. It has been consistently held that the reports of the Patuxent Institution are admissible in evidence, even though those reports routinely contain statements concerning a defendant's past record of contact with the courts or law enforcement agencies. See *Schlatter v. Director,* 238 Md. 132 (1964) ; *Gray v. Director, supra.* See also *Boitnott v. Director,* 1 Md. App. 10 (1967).

That the State must prove its case beyond a reasonable doubt. The standard of proof to be applied in defective delinquency hearings is "a fair preponderance of the evidence." *McDonough v. Director,* 3 Md. App. 539 (1968).

That the applicant should have been allowed to cross-examine and confront the witnesses against him. The applicant was apparently not denied the opportunity to examine Dr. Boslow, who testified at trial; this contention is directed instead at the fact that all persons who examined the applicant at Patuxent were not present at trial for the applicant to confront. Such a contention provides no ground for relief. See *McDonough v. Director, supra.*

That the State should be compelled to supply indigent applicants with a copy of the transcript with which to prosecute

an appeal and that the applicant should be afforded an automatic right to appeal from a finding that he is a defective delinquent. Such appellate restrictions were considered and upheld in *Director v. Daniels, supra* at 46.

*Application denied.*